1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

INTERNATIONAL METAPHYSICAL
MINISTRY, INC.,

8                    Plaintiff,

9         v.

10

WISDOM OF THE HEART CHURCH,

11                    Defendant.

12

Case No.  21-cv-08066-KAW

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT; GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 52,[1] 53, 55

13          On October 14, 2021, Plaintiff International Metaphysical Ministry, Inc. filed the instant

14 case against Defendant Wisdom of the Heart Church, alleging that Defendant violated a settlement

15 agreement's non-disparagement clause and provision to refrain from using Plaintiff's marks in its

16 advertising.  (Compl. at 2-3, Dkt. No. 1.)  Pending before the Court is Plaintiff's motion for partial

17 summary judgment and Defendant's motion for partial summary judgment.  (Pl.'s Mot. for Summ.

18 J., Dkt. No. 55; Def.'s Mot. for Summ. J., Dkt. No. 53.)

19          Having considered the parties' filings, the relevant legal authority, and the arguments made

20 at the August 18, 2022 hearing, the Court DENIES Plaintiff's for partial summary judgment, and

21 GRANTS IN PART AND DENIES IN PART Defendant's motion for partial summary judgment.

## I.      BACKGROUND[2]

### A.      Settlement Agreement

Plaintiff and Defendant are competing educational institutions offering instruction in

---

[1] On July 11, 2022, Defendant filed a motion for partial summary judgment.  (Dkt. No. 52.)  On
July 14, 2022, Defendant filed an amended motion for partial summary judgment.  (Dkt. No. 53.)
Accordingly, the Court TERMINATES the July 11, 2022 motion for partial summary judgment as
superseded by the July 14, 2022 motion.

[2] The Court notes that the parties' briefing unnecessarily complicated review of these motions, as

metaphysics.  (Compl. ¶¶ 1, 2.)  In 2017, Plaintiff and Paul Leon Masters Revocable Living Trust Dated 07/06/15 ("Masters Trust") filed suit against Defendant, alleging trademark infringement ("2017 Action").  (Compl. ¶ 10.)  In August 2019, the parties entered into the Settlement Agreement.  (*See* Goodman Decl., Exh. 5 ("Settlement Agreement"), Dkt. No. 55-1.)  The Settlement Agreement includes a non-disparagement clause, which states, in relevant part:

### 5.    Mutual Non-Disparagement

> The parties agree to not disparage one another and to not make any statement about the other's conduct, reputation, or business dealings that is designed to or has the effect of injuring the other's reputation or business interests.  The parties agree and understand that, if either Party breaches this non-disparagement provision, then that Party will be subject to a claim by the other Party or Parties.  The Parties further agree that damages that would be sustained by either Party in the event of a breach of this non-disparagement provision would be difficult or impossible to calculate, and thus agree that injunctive relief to prevent further breach of this Settlement Agreement is an appropriate remedy.

(Settlement Agreement at 3.)  The Settlement Agreement further addresses "Use of the Parties' Registered Trademarks or Abbreviations Thereof," stating:

> 7.1    Plaintiffs agree not to use any of Defendant UMS' registered trademarks in any way, not to use the phrase "University of Metaphysical Sciences" in any way,  and further agrees not to use the abbreviation thereof of such as UMS in any way, consents to the registration of both the phrase and the abbreviation as a word trademark, and will not oppose or assist anyone else in opposing the registration of "University of Metaphysical Sciences" and/or "UMS" as a word trademark by Defendant UMS.

---

the parties scattered relevant facts throughout the briefing (rather than including all facts in the background section, or in some instances including no background section at all).  The briefs also often lacked correct and/or *any* citations to the record.  (*See* Pl.'s Mot. for Summ. J. at 5-6 (discussing UMS's "campaign" to violate the Agreement with **no** citations), 7-8 (describing Plaintiff's discovery of Defendant's website with no citations); Def.'s Mot. for Summ. J. at 5, 13-20 (devoting two paragraphs to Plaintiff's alleged lack of ownership of the trademarks at issue in the background section, before identifying the actual facts throughout the argument section); Pl.'s Opp'n at 2 (explaining that Mr. Masters owned the trademarks for exclusive use to IMM, and that he had died shortly before the prior action with no citations), 6 (stating that the parties did not require registration with the USPTO with no citations); Def.'s Opp'n (including no background section at all).)

It is simply not the Court's responsibility to comb through the briefs and thousands of pages of exhibits to piece together the parties' factual contentions, particularly on a motion for summary judgment.  Denial could have been warranted on this ground alone.  Any facts that the Court missed or accidentally misstated is due entirely to the disorganization, lack of citations, and unnecessarily voluminous exhibits.

2

United States District Court
Northern District of California

7.2     Defendant agrees not to use any of the Plaintiffs' registered trademarks, which include University of Metaphysics, University of Sedona, International Metaphysical Ministry, and Theocentric Psychology, in any way, and further agrees not to use the abbreviations thereof such as IMM, UOM, or UOS in any way, and further will not oppose or assist anyone in opposing the registration of these four registered trademarks as word trademarks by Plaintiffs.

7.4     Notwithstanding the provisions of this Section 7, if either party abandons any of its trademarks, or has the rights to its trademarks or other intellectual property disposed of due to bankruptcy or other action, this Settlement Agreement shall not prohibit the other Party from lawfully obtaining and/or using such Trademarks.

(Settlement Agreement at 4-5.)

Additionally, the Settlement Agreement includes a confidentiality provision (which neither party provides), as well as a pre-notification requirement that states:

Section 9.1     The complaining Party must serve the other Party written notice of the basis of any claim 60 days prior to filing suit. The notice may be served by e-mail provided that the party receiving the notice confirms its receipt, by certified mail with return receipt, or by overnight courier service with delivery confirmation requiring a signature.  Such notice shall be effective on the date of confirmed receipt.  A copy of the notice shall also be provided to the Party's counsel of record in this action.

(Complaint ¶ 30[3].)

## B.     Trademarks at Issue

On January 3, 2012, Mr. Masters registered "University of Sedona" as a service mark. (Def.'s July 14, 2022 Request for Judicial Notice ("RJN"), Exh. 1, Dkt. No. 53-2.)[4]  At the time the Settlement Agreement was entered into, the "University of Sedona" registered trademark was dead, having been cancelled in August 2018.  (*Id.*)  On August 31, 2021, Plaintiff applied to

---

[3] Neither party appears to provide the entire Settlement Agreement, or all sections raised in these motions. Moreover, the various sections are scattered throughout the exhibits, as the parties provide multiple copies of the Settlement Agreement with different redactions, further complicating the Court's review of the provisions at issue in this case.

[4] Both parties seek judicial notice of certain public records from the United States Patent and Trademark Office ("USPTO") website.  Neither party filed objections to the other's requests. Accordingly, the Court takes judicial notice of the USPTO records.  *Oroamerica Inc. v. D&W Jewelry, Inc.*, 10 Fed. Appx. 516, 517 n.4 (9th Cir. 2001) (taking judicial notice of USPTO registration certificates, file history, and application materials).

United States District Court
Northern District of California

register "University of Sedona" as a service mark.  (Def.'s July 14, 2022 RJN, Exh. 4.)  On June 6, 2022, a nonfinal office action was issued, refusing Plaintiff's application as "Primarily Geographically Descriptive" and because additional information was needed.  (Def.'s July 14, 2022 RJN, Exh. 5.)

On September 23, 2014, Mr. Masters registered "International Metaphysical Ministry" as a service mark.  (Def.'s July 14, 2022 RJN, Exh. 2.)  On April 30, 2021, the trademark was cancelled.  (*Id.*)  On August 3, 2021, Plaintiff submitted a new application to register "International Metaphysical Ministry."  (Def.'s July 14, 2022 RJN, Exh. 6.)  On May 3, 2022, a nonfinal office action was issued, refusing Plaintiff's application as "Merely Descriptive" and suggesting an amendment.  (Def.'s July 14, 2022 RJN, Exh. 7.)

On September 13, 2011, Mr. Masters registered "Theocentric Psychology" as a service mark.  (Def.'s July 14, 2022 RJN, Exh. 3.)  At the time the Settlement Agreement was entered into, the "Theocentric Psychology" registered trademark was dead, having been cancelled in April 2018.  (*Id.*)

On October 30, 2007, Mr. Masters registered "University of Metaphysics" as a service mark.  (Def.'s July 14, 2022 RJN, Exh. 8.)  On April 18, 2018, the "University of Metaphysics" service mark was renewed by Mr. Masters.  (Def.'s July 14, 2022 RJN, Exhs. 8, 9.)  It appears Mr. Masters passed away in January 2016 (prior to the 2017 lawsuit), and had signed an "Assignment of Intellectual Property Rights and Royalties" to the Masters Trust in July 2015.  (July 28, 2022 Hull Decl., Exh. A, Dkt. No. 65-1.)  Schedule B of the Assignment lists Mr. Masters' trademarks, but does not identify "University of Metaphysics."  (*Id.* at IMM000461.)  Mr. Masters also had a pour-over will, which assigns his probate estate to the Masters Trust.  (July 28, 2022 Hull Decl., Exh. B § 1.01.)

### C.    Actions Following Settlement Agreement

In October 2019, Defendant's founder and president, Christine Breese, noticed ads on Google "for every possible search for [Defendant's] trademarked name appearing outside of the United States linked to [Plaintiff].  These Google ads included all combinations of words with [Defendant's] name."  (Breese Decl. ¶ 7, Dkt. No. 66-3.)  Ms. Breese also states that Defendant

1    was alerted to the issue by its students in those countries.  (Breese Decl. ¶ 7.)  In mid-October

2    2019, Ms. Breese noticed the Google suggested search term "university of metaphysical sciences

3    sedona arizona."  (Breese Decl. ¶ 8.)  She asked office manager Judith Pasko to send notice to

4    Plaintiff asking them to remove Defendant's name from Plaintiff's bid words, and to stop running

5    ads on Defendant's name.  (Breese Decl. ¶ 8.)  In late 2019, Ms. Breese noticed that Plaintiff had

6    ads on all of Defendant's name and word combinations.  (Breese Decl. ¶ 9.)

7        Plaintiff alleges that in February 2020, Defendant posted a webpage referencing Plaintiff,

8    which made false and disparaging statements.  (Pl.'s Mot. for Summ. J. at 5-6; *see* Goodman

9    Decl., Exh. 4 (screenshots of webpage), Dkt. No. 55-1.)  Plaintiff further alleges that this website

10   created confusion among students, and that multiple prospective students contacted it asking about

11   the claims made on the webpage.  (*Id.* at 7.)  Plaintiff includes no citations to the record in support

12   of this allegation.  On September 17, 2020, Plaintiff sent Defendant a letter alleging a breach of

13   the Settlement Agreement's non-disparagement clause based on the website.  (Veregge Decl. ¶ 2,

14   Dkt. No. 19-2.)  On October 17, 2020, Defendant informed Plaintiff that the content had been

15   edited, and stated: "Please let me know if your client still has any issues with it."  (Veregge Decl.

16   ¶ 2.)  Defendant did not receive a response.  (Veregge Decl. ¶ 2.)  On November 4, 2020,

17   Defendant followed up, but received no response.  (Veregge Decl. ¶ 3.)

18       On September 23, 2020, Ms. Breese, e-mailed Ms. Pasko, stating: "Just have to make sure

19   it's NOT a dynamic ad that makes their name in the ad or anything like that, just one that has our

20   name." (Goodman Decl., Exh. 3 at RFP#1001615.)[5]  On October 5, 2020, Ms. Pasko e-mailed

21   Defendant's advertising agent, stating: "Can you give me an update on the status of this?  Also,

22

23   _____

24   [5] Plaintiff asserts that in August 2020, Defendant decided to run ads using Plaintiff's name.  (Pl.'s
     Mot. for Summ. J. at 6-7.)  In support, Plaintiff cites to an August 20, 2020 e-mail.  The e-mail
25   was not included in the exhibits.  Plaintiff also states that Christine Breese explained the e-mail
     during her deposition, but does not cite the deposition transcript pages.  Likewise, Plaintiff refers
26   to a November 6, 2020 e-mail, which is also not included.  (Pl.'s Mot. for Summ. J. at 9.)
     Accordingly, the Court will not consider this information.

27   The Court also notes that Plaintiff's decision to group all e-mails into a single exhibit (in no
     apparent order) while referring to the e-mails by date only rather than page number created
28   additional unnecessary difficulties, as the Court needed to go through every page of the exhibit to
     locate the specific e-mail (if it was even included).

United States District Court
Northern District of California

1    Christine wants to be sure that we devote as much resource to this as possible (high bid, several

2    terms) to be able to show up in these searches." (Aug. 4, 2022 Goodman Decl., Exh. 2 at

3    RFP#100732.) In response, Defendant's advertising agent stated: "I've checked with the team,

4    and yes, the edits were made last week. The keyword 'University of Metaphysics' is being used,

5    but not in dynamic ads. I have also relayed to our team the need to devote more resources here."

6    (*Id.* at RFP#100733.) Ms. Pasko then replied, "I didn't see an ad come up when I did a search for

7    'University of Metaphysics'? Also can we add related terms: University of Sedona, International

8    Metaphysical Ministry. I also want to be sure that these ads are showing everywhere we are

9    running ads, not just in the US?" (Aug. 4, 2022 Goodman Decl., Exh. 2 at RFP#1000733.) In

10    response, Defendant's advertising agent stated: "Yes, I've passed through the request for the new

11    terms through to our team." (*Id.*) On October 22, 2020, Ms. Breese e-mailed Ms. Pasko, stating:

12    "we only want to bid on university of metaphysics and university of sedona searches, nothing with

13    our name in it, we have good results with that already." (Goodman Decl., Exh. 3 at

14    RFP#1001658.)

15        On October 14, 2021, Plaintiff filed the instant case, bringing claims for: (1) breach of

16    contract based on the non-disparagement clause, (2) breach of the implied covenant of good faith,

17    and (3) breach of contract based on the advertising terms. (Compl. at 21-23.) On November 22,

18    2021, Defendant filed its answer and counterclaims. (Dkt. No. 23.) On December 10, 2021,

19    Defendant filed its amended counterclaims, bringing claims for: (1) breach of contract based on

20    the pre-lawsuit notification provision and confidentiality provision, (2) breach of contract based on

21    the advertising terms, (3) breach of the implied covenant of good faith and fair dealing, (4)

22    equitable estoppel and unclean hands, (5) common law unfair competition, and (6) violation of

23    California's Unfair Competition Law ("UCL"). (Am. Countercl. at 16-20, Dkt. No. 28.)

24        On July 14, 2022, the parties filed their motions for partial summary judgment.[6] On July

25    _____

26    [6] The Court notes that in total, the parties have filed over 1,700 pages of exhibits. The vast
    majority of these pages appear to be superfluous. For example, Plaintiff attached the *entirety* of

27    Judith Pasko's 130-page deposition and Christine Breese's 154-page deposition while citing three
    pages from each. Likewise, Defendant attached the entirety of Michelle Behr's deposition **twice**,

28    including attaching all 240 pages of the deposition to the reply while citing only 10 pages. It is
    also unclear why Defendant attached a 400-page list of web pages that were examined by

United States District Court
Northern District of California

1  28, 2022, Plaintiff filed its opposition to Defendant's motion for partial summary judgment. (Pl.'s
2  Opp'n, Dkt. No. 65.) On July 29, 2022, Defendant filed its opposition. (Def.'s Opp'n, Dkt. No.
3  66.) On August 4, 2022, the parties filed their replies in support of their respective motions for
4  partial summary judgment. (Def.'s Reply, Dkt. No. 69. Pl.'s Reply, Dkt. No. 70.)

## II.   LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or
defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate
discovery, there is no genuine issue as to material facts and the moving party is entitled to
judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient
evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the
basis for its motion, and of identifying those portions of the pleadings and discovery responses
that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where
the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no
reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City
of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving
party may discharge its burden of production by either (1) "produc[ing] evidence negating an
essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the
nonmoving party does not have enough evidence of an essential element of its claim or defense to
discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz
Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth

Defendant's expert. The Court will not review any exhibit **except** for the specific page cited. In
the future, counsel should be judicious when deciding which exhibit pages will actually aid the
Court's resolution of the motion.

United States District Court
Northern District of California

specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.  "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254.  "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted).  The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

## III.    DISCUSSION

### A.    Plaintiff's Objections

Plaintiff objects to the declaration of Defendant's expert, Bill Hartzer.  (Pl.'s Reply at 6-7.) First, Plaintiff objects to the declaration as a "late-disclosed expert report," and an improper supplementation.  (*Id.*)  Plaintiff does not explain why it is a supplemental report, such as by identifying the specific paragraphs in the declaration that were not included in Mr. Hartzer's original expert report.  Simply because Defendant provides Mr. Hartzer's opinions in the form of a declaration rather than an expert report does not mean that it is a supplemental report, or that new opinions are being presented to the Court.  In any case, expert discovery is not closed; the expert discovery deadline is September 30, 2022.  (Dkt. No. 44.)

Second, Plaintiff argues that Mr. Hartzer's declaration is not reliable because "[e]very paragraph of the declaration is speculative; it discusses what processes Google might use, and what might be possible to manipulate Google ads or search results, but does not provide conclusions even regarding those processes—much less any conclusions about whether [Plaintiff]

8

1   undertook any efforts to manipulate search results." (Pl.'s Reply at 7.) Plaintiff also contends that

2   there is no scientific process or specialized knowledge. (*Id.*)

3       Having reviewed Mr. Hartzer's declaration, it is not apparent to the Court that it is so

4   unreliable that it should be stricken. Mr. Hartzer explains his process, including how he

5   conducted a Google search and how one can manipulate keyword searches. (Hartzer Decl. ¶ 10.)

6   Mr. Hartzer also explains that one can pay third-party services to manipulate the Google search

7   results. (Hartzer Decl. ¶ 11.) Mr. Hartzer then identifies which tools he used to research the

8   keyword phrase, which allowed him to see how many searches were performed for that phrase.

9   (Hartzer Decl. ¶ 12.) He then compared a Google Search to a Bing search, and explained the

10  differences and the conclusions he draws from those comparisons. (Hartzer Decl. ¶¶13-17.)

11  Accordingly, the Court OVERRULES Plaintiff's objection.

12      **B.   Plaintiff's Claims**

13          **i.   Claim Three: Breach of Contract – Advertising Terms**

14              a.   Settlement Agreement Language

15       Both parties seek summary judgment as to Plaintiff's breach of contract claim based on the

16  agreement "not to use each other's registered marks or abbreviations thereof in their advertising."

17  (Compl. ¶ 136.) Again, § 7.2 states: "Defendant agrees not to use any of the Plaintiffs' registered

18  trademarks, which include University of Metaphysics, University of Sedona, International

19  Metaphysical Ministry, and Theocentric Psychology, in any way, and further agrees not to use the

20  abbreviations thereof . . . in any way, and further will not oppose or assist anyone in opposing the

21  registration of these four registered trademarks as word trademarks by Plaintiffs." The parties,

22  however, dispute whether §7.2 requires that the trademark be **registered** before Defendant is

23  prohibited from its use.

24      Based on a plain reading of § 7.2, the Court finds that the trademark must be "registered."

25  To find otherwise would require reading out the word "registered" entirely, rendering the word

26  entirely meaningless. *See Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011) ("To

27  the extent practicable, the meaning of a contract must be derived from reading the whole of the

28  contract, with individual provisions interpreted together, in order to give effect to all provisions

and to avoid rendering some meaningless.").

Plaintiff argues that to require that the trademark be "registered" makes no sense, as two of the four examples of "registered trademarks" – "University of Sedona" and "Theocentric Psychology" -- were canceled when the Settlement Agreement was signed.  (Pl.'s Opp'n at 15.)  Plaintiff contends that interpreting "registered" to mean what it says would render the inclusion of those two trademarks superfluous.  (*Id.*)  This is not necessarily so.  As Plaintiff points out, those trademarks were "registered during the course of the 2017 Action."  (*Id.* at 14.)  Thus, the trademarks could very well have been included because Plaintiff was in the process of registering the trademarks when the Settlement Agreement was signed.  At most, the inclusion of the two unregistered trademarks creates an ambiguity that must be construed against the drafter.  *Erdman v. Cochise Cty.*, 926 F.2d 877, 880 (9th Cir. 1991) ("Typically, a settlement agreement is analyzed in the same manner as any contract, i.e., any ambiguities are construed against the drafter.").  To find otherwise would allow Plaintiff to enforce the Settlement Agreement as to a trademark that is neither registered nor listed as an example in the Settlement Agreement; if Plaintiff was to obtain a new trademark that was unregistered, it would be contrary to the plain language of the Settlement Agreement that Defendant would be prohibited from using that unregistered trademark.[7]

Plaintiff also points to § 7.2's requirement that Defendant not "oppose or assist anyone in opposing the registration of these four registered trademarks as word trademarks by Plaintiffs." (Pl.'s Opp'n at 15.)  Plaintiff argues that this demonstrates that the trademarks need not be officially registered.  (*Id.*)  The Court disagrees.  A word mark is a type of trademark, namely "a trademark without any design elements."  *Monster Energy Co. v. BeastUp Ltd. Liab. Co.*, 395 F. Supp. 3d 1334, 1355 (E.D. Cal. 2019).  Thus, the word can be protected without any stylization. Plaintiff can have a registered trademark but not a word mark; the provision would then prevent Defendant from opposing Plaintiff obtaining the latter.

Other language in the Settlement Agreement supports a registration requirement.  For

---

[7] At the hearing, Plaintiff agreed that the Settlement Agreement would prohibit the use of marks that were neither registered nor specifically enumerated.  Yet again, such an interpretation would require that the word "registered" have meaning.

1    example, Defendant's mark, "University of Metaphysical Sciences," was originally registered as a

2    design plus word mark, consisting of a purple flower and circle spirograph design with purple

3    lettering.  (*See* Hull Decl., Exh. D.)  Defendant did not register "University of Metaphysical

4    Sciences" as a standard character mark (thus protecting the words itself) until May 24, 2022, after

5    the parties entered into the Settlement Agreement.  (Hull Decl., Exh. E.)  Section 7.1, in turn,

6    states: "Plaintiffs agree not to use any of Defendant UMS' registered trademarks in any way, not

7    to use the phrase 'University of Metaphysical Sciences' in any way, and further agrees not to use

8    the abbreviation thereof . . . ."  Thus, § 7.1 makes clear that "registered" has meaning other than

9    any trademark in use by the parties at the time, as there is a *separate* prohibition for the then-

10   unregistered "University of Metaphysical Sciences" word mark.  Likewise, while Plaintiff points to

11   § 7.4's lack of a "registration" requirement, this only emphasizes that the deliberate use of the

12   word "registered" in § 7.1 and § 7.2 must have meaning.

13         Accordingly, the Court finds that per the plain language of the Settlement Agreement, the

14   trademark must be registered for Defendant to be prohibited from its use.  Thus, to the extent

15   Plaintiff asserts that Defendant used the "University of Sedona" and "Theocentric Psychology" in

16   violation of § 7.2, such a claim would fail because neither mark was registered during the relevant

17   time period of this case.

18              b.   Standing to Bring Suit

19         Defendant argues that summary judgment in its favor is warranted because Plaintiff lacks

20   standing to bring the case as it did not own any of the registered marks at the time the complaint

21   was filed.  (Def.'s Mot. for Summ. J. at 6, 11.)

22         To the extent Defendant argues that Plaintiff must have owned the registered mark when

23   this case was filed, the Court disagrees.  Defendant relies on the principle that "[w]hen a

24   trademark's registration is cancelled, its owner is no longer entitled to the rights that flow from

25   federal registration, including the presumption that the mark is valid, the statutory presumption of

26   ownership, or the exclusive right to use the mark in commerce."  (*Id.* at 10.)  While true, the

27   instant case does not depend on a finding that the mark is valid or that there is an exclusive right to

28   use *at the time the case was filed*.  Indeed, Plaintiff does not bring claims for violation of the

1    Lanham Act; rather, Plaintiff brings claims for breach of the Settlement Agreement.  (Pl.'s Opp'n

2    at 8.)  When the trademark lost its registration affects when and for how long the breach occurred,

3    not *whether* a breach occurred.  The fact that the trademarks were no longer registered when the

4    case was filed does not mean that Defendant was retroactively permitted to use the trademarks

5    during the period that they were registered, and Defendant cites no authority to the contrary.

6    Accordingly, if Defendant used the "International Metaphysical Ministry" mark before it was

7    cancelled in April 2021, it would have violated § 7.1's prohibition on use of Plaintiff's registered

8    mark.

9         Next, Defendant argues that Plaintiff does not own the "University of Metaphysics" mark

10   because the mark is owned by Mr. Masters.  (Def.'s Mot. for Summ. J. at 18.)  Mr. Masters, who

11   was deceased at the time of the 2017 Action, appears to have a pour over will that assigns his

12   probate estate to the Masters Trust.  (July 28, 2022 Hull Decl., Exh. B § 1.01.)  Defendant argues

13   that for the "University of Metaphysics" mark to have gone from the probate estate to the Masters

14   Trust would have required a transfer by court order, but cites no authority in support.  (Def.'s

15   Reply at 18.)  The Masters Trust was a plaintiff in the 2017 action; thus, its registered marks were

16   amongst those that Defendant cannot use, even if Plaintiff did not itself own the mark.

17        In the alternative, however, Defendant argues that the "University of Metaphysics"

18   registered trademark should be cancelled because it was renewed on April 18, 2018 by Mr.

19   Masters, even though Mr. Masters was already deceased.  (Def.'s Mot. for Summ. J. at 20; Def.'s

20   Opp'n at 12.)  Thus, Defendant argues that any renewal application filed on behalf of the deceased

21   Mr. Masters was improper because Mr. Masters was not alive.[8]  (*Id.* at 13.)

22        Plaintiff responds that there is no basis for cancelling a trademark registration because of

23   its owner passing away, but this is beside the point.  (Pl.'s Reply at 11.)  Defendant is not arguing

24   _____

25   [8] Defendant also argues that the renewal application is invalid because it was filed by Attorney
     Linda Wallace on behalf of Mr. Masters, but that Attorney Wallace would not have had any

26   authority to act on behalf of Mr. Masters as any attorney-client relationship would have ceased to
     exist upon his death.  (Def.'s Opp'n at 13; *see also Swartfager v. Wells*, 53 Cal. App. 2d 522, 528

27   (1942) ("The authority of an attorney necessarily ceases with the death of the client, for no one can
     act for a dead man.").  Plaintiff does not substantively address this issue, and it is unclear to the

28   Court how Attorney Wallace would have been able to file the renewal application for Mr. Masters.

United States District Court
Northern District of California

1    that the trademark registration is invalid because Mr. Masters passed away; rather, Defendant

2    argues that the trademark registration is invalid because it was renewed on Mr. Masters' behalf

3    *after* Mr. Masters passed away.  Indeed, as discussed above, ownership of the registered mark

4    would have transferred to the Masters Trust (or Mr. Masters' probate estate) after Mr. Masters

5    passed away.  Thus, it appears that it was the Masters Trust who would have had to file the

6    renewal application.  Accordingly, the renewal application was void, such that the "University of

7    Metaphysics" trademark should not have been registered.  *See* UNITED STATES PATENT AND

8    TRADEMARK OFFICE, TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1201.02(c) ("If an

9    application is filed in the name of Entity A, when the mark was assigned to entity B before the

10   application filing date, the application is void as filed because the applicant was not the owner of

11   the mark at the time of filing.").

12           Plaintiff's reliance on *BLK Brands, LLC v. Five Tran Investment Group, LLC* is misplaced.

13   (Pl.'s Opp'n at 13.)  There, the district court found that the *incontestability* of the mark could not

14   be challenged based on the mark being registered under the incorrect owner.  No. SACV 20-

15   01932-CJC (JDEx), 2021 U.S. Dist. LEXIS 139599, at *6-7 (C.D. Cal. Apr. 7, 2021).  Here,

16   however, Defendant is not challenging the mark's incontestability.  Rather, Defendant is arguing

17   that the registration is simply void to begin with because it was renewed by a deceased individual.

18           At the hearing, Plaintiff suggested that per *BLK Brands, LLC*, it was irrelevant whether an

19   incorrect owner registered a mark, such that the mark could have been registered by Big Bird and

20   still be fine.  Such an example only highlights the absurdity of Plaintiff's suggestion that

21   registering a mark in the name of an incorrect individual has no consequence.  Otherwise, any

22   individual could freely register a trademark that does not belong to them, and still have a valid

23   trademark.

24           For purposes of this case, therefore, the Court finds that the "University of Metaphysics"

25   trademark is not a registered trademark as required by the Settlement Agreement.[9]

26

27   ────────────────

28   [9] To the extent Defendant asks that the Court "cancel" the "University of Metaphysics" trademark,
     Defendant did not bring a claim to do so under the Lanham Act, whether as an affirmative action
     or counterclaim.  Defendant can petition the USPTO for cancellation.

United States District Court
Northern District of California

1    Finally, in the reply, Defendant for the first time argues that all four marks at issue are

2    "service marks," not "trademarks," and thus would not satisfy § 7.2.  (Def.'s Reply at 15.)  A

3    service mark is a type of trademark.  UNITED STATES PATENT AND TRADEMARK OFFICE, WHAT IS A

4    TRADEMARK?, https://www.uspto.gov/trademarks/basics/what-trademark (last accessed Aug. 12,

5    2022) ("The word 'trademark' can refer to both trademarks and service marks.  A trademark is

6    used for goods, while a service mark is used for services.").  The Court rejects this argument.

7    Thus, it appears that the only registered mark that Defendant was prohibited from using

8    was "International Metaphysical Ministry" until its cancellation in April 2021.

9    c.   Evidence of Use

10    Plaintiff also seeks summary judgment on this claim; in support, Plaintiff points to various

11    e-mails between Ms. Breese, Ms. Pasko, and/or their advertising agent regarding Defendant's

12    prohibited use of Plaintiff's marks, as well as deposition testimony.  (Pl.'s Mot. for Summ. J. at 6-

13    9.)  Of note, Plaintiff does not provide any screenshots or examples of the alleged improper use of

14    the trademarks.

15    The Court finds that Plaintiff has not met its burden of proof.  This is particularly the case

16    where, as discussed above, the only mark Defendant was prohibited from using was "International

17    Metaphysical Ministry."  The only reference to this mark was on October 5, 2020, when Ms.

18    Pasko asked Defendant's advertising agent to add "International Metaphysical Ministry" as a

19    related term."  (Aug. 4, 2022 Goodman Decl., Exh. 2 at RFP#100733.)  In response, the

20    advertising agent stated that she "passed through the request for the new terms through to our

21    team."  (*Id.*)  There is no evidence, however, that the request was then implemented.  At the

22    hearing, Plaintiff acknowledged that this was a question of fact for a jury.  Absent such a showing,

23    summary judgment is not warranted.  Further, as discussed below, the Court will not grant

24    Plaintiff's motion for summary judgment on Defendant's counterclaims regarding Plaintiff's

25    failure to comply with the Settlement Agreement's notification provisions.  Through these

26    counterclaims, Defendant seeks to prevent Plaintiff from enforcing the Settlement Agreement even

27    if Defendant committed a violation.  Thus, there is a question of fact as to whether Plaintiff may

28    enforce the Settlement Agreement in light of its failure to notify Defendant of this alleged breach.

United States District Court
Northern District of California

d.   Conclusion

The Court finds that the following three marks were not registered or their registration was void: "University of Sedona," "Theocentric Psychology," and "University of Metaphysics." Accordingly, the Court GRANTS Defendant's motion for summary judgment as to these three marks.  The Court, however, finds that Plaintiff may bring its breach of contract claim as to Defendant's alleged use of the mark "International Metaphysical Ministry," to the extent the use occurred prior to the mark's cancellation on April 30, 2021.  The Court DENIES Defendant's motion for summary judgment as to this mark.  The Court further DENIES Plaintiff's motion for summary judgment on this claim.

**C.   Claim One: Breach of Contract – Anti-Disparagement Clause**

Next, Plaintiff seeks summary judgment as to its breach of the Settlement Agreement's anti-disparagement provision.  In its brief, Plaintiff focuses solely on whether Defendant's webpage targets Plaintiff, without providing any analysis as to how the webpage is disparaging. (*See* Pl.'s Mot. for Summ. J. at 10-14.)  After Defendant pointed out this deficiency in its opposition, Plaintiff responded:

> The objectionable passages from the webpage were set forth in detail in the Motion and there is not space to revisit them here.  The Court can review the passages and consider whether they are disparaging under the Agreement's definition.

(Pl.'s Reply at 16.)

The Court observes that in Plaintiff's previous motion for a preliminary injunction, Plaintiff likewise failed to address the claim's merits and their likelihood of success as to whether the website was disparaging.  In denying Plaintiff's motion, the Court stated:

> The burden is not on the Court to make arguments on behalf of Plaintiff without the benefit of any legal authority or analysis. Rather, it is Plaintiff's burden to establish this factor.  For this reason alone, denial is warranted.

(Prelim. Inj. Order at 5, Dkt. No. 30.)  The Court once again declines to do Plaintiff's job for it. The Court has absolutely no obligation to review each and every statement and determine which ones are disparaging; it is **Plaintiff's** responsibility to explain which statements are disparaging

and why.  The Court DENIES Plaintiff's motion for summary judgment as to the anti-disparagement clause.

### D.   Defendant's Counterclaims

#### i.   Counterclaim One: Breach of Contract

Defendant brings a counterclaim based on Plaintiff's breach of the pre-suit notice provision.[10]  (Am. Countercl. ¶ 56.)  Plaintiff seeks summary judgment on the ground that notice was not necessary because providing notice was futile.  "California law allows for equitable excusal of contractual conditions causing forfeiture in certain circumstances, including circumstances making performance futile."  *Gueyffier v. Ann Summers, Ltd.*, 43 Cal. 4th 1179, 1186 (2008).

The Court finds there is a factual dispute as to whether notice was futile.  With respect to the webpage, Plaintiff complains that after it notified Defendant, Defendant simply altered a few words.  (Pl.'s Mot. for Summ. J. at 14.)  It appears, however, that Defendant then asked Plaintiff if the modifications were acceptable; Plaintiff did not respond, so no further modifications were made.  Plaintiff cites to no facts or evidence in the record explaining why Plaintiff did not respond.  To the extent Plaintiff relies solely on its belief that the modifications were insufficient, Plaintiff fails to make any demonstration that the modifications were, in fact, disparaging.  A jury could find that the website was not disparaging, or that Plaintiff should have notified Defendant that further modifications were required.

As to Defendant's alleged use of Plaintiff's trademarks in Defendant's advertising, Plaintiff contends that the "advertising created a further, and more imminent, threat of irreparable harm," such that "sending an email and waiting was simply not an option."  (Pl.'s Mot. for Summ. J. at 14.)  Plaintiff, however, cites no evidence in support of this.  Thus, it is unclear how the Court

---

[10] In the same counterclaim, Defendant also asserts that Plaintiff breached the confidentiality provision.  (Am. Countercl. ¶ 59.)  It is not entirely clear to the Court what damages Defendant suffered as a result of this breach.  In any case, Plaintiff did not move for summary judgment on this particular portion of the counterclaim.  While Plaintiff asserts that this counterclaim should be dismissed in its reply, the Court will not grant relief that was first requested in a reply brief.  (*See* Pl.'s Reply at 18; *see also FT Travel – N.Y., LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply.").

United States District Court
Northern District of California

is to find that Plaintiff did, in fact, believe that providing notice was not feasible, let alone that Plaintiff was correct.

Instead, Plaintiff relies on Ms. Breese's e-mails, in which Ms. Breese states that she wants "ads for their searches to come up long enough before we go to mediation so this can be addressed during this mediation." (Pl.'s Mot. for Summ. J. at 15.)  Plaintiff, however, provides no evidence that it had any knowledge of these e-mails or Defendant's intentions at the time it decided not to provide notice.  Thus, Plaintiff had no reason to know that notice was futile.  In any case, it is not clear that these e-mails alone demonstrate that notice would have been futile.  The Court DENIES Plaintiff's motion for summary judgment on this counterclaim.

### ii.      Counterclaims Two, Five, and Six: Use of Advertising Terms

Defendant brings counterclaims based on Plaintiff's alleged misuse of Defendant's name as a keyword in its advertising.  (Am. Countercl. ¶ 64.)  Plaintiff asserts that summary judgment is warranted because there is "zero evidence" that Plaintiff used Defendant's marks or terms, pointing to Ms. Breese's deposition testimony.  (Pl.'s Mot. for Summ. J. at 5, 16.)  There, Ms. Breese testified that she suspected Plaintiff was using Defendant's marks or terms based on the Google searches.  (Goodman Decl., Exh. 2 ("Breese Depo.") at 81:17-82:5.)  Likewise, Ms. Pasko testified that they did a search of "University of Metaphysical Sciences in quotes" and that "an ad came up," but that they had no evidence that it was Plaintiff who created the ad.  (Goodman Decl., Exh. 1 ("Pasko Depo.") at 51:22-52:7.)

Ms. Breese, however, states in her declaration that she noticed Google search terms that linked Defendant's name with Plaintiff.  (Breese Decl. ¶ 7.)  Defendant's expert, Mr. Hartzer, also explains how Google's auto-suggest feature can be manipulated to include terms related to Plaintiff, such as "Sedona arizona."  (Hartzer Decl. ¶ 15.)  When using Google's auto-suggested search "University of Metaphysical Sciences Sedona arizona," the first ad was for Plaintiff. (Hatzer Decl. ¶ 15.)  Mr. Hatzer also discusses his review of links to Plaintiff's websites that contain "anchor text" with Defendant's brand and trademark.  (Hatzer Decl. ¶ 27.)  For example, there could be a link on another website that uses Defendant's trademark, "University of Metaphysical Sciences," as the anchor text, but clicking the link takes the user to Plaintiff's

United States District Court
Northern District of California

17

website.  (Hatzer Decl. ¶ 27.)  The search engines "also consider the 'anchor text' of a link as an indication of what the website they're linking to is about," resulting in the search engines mistakenly thinking that Plaintiff's website is associated with Defendant's trademark.  (Hatzer Decl. ¶ 28.)  Mr. Hatzer also opines that these links are "unnatural," are likely caused by "some sort of manipulation."  (Hatzer Decl. ¶ 29.)

While this may not be strong evidence, it is at least some evidence that Plaintiff used Defendant's name in its advertising terms.  A jury can make a reasonable inference that if Plaintiff's website or ads were appearing when conducting a Google search of Defendant's name, or if "anchor text" containing Defendant's trademark led instead to Plaintiff's website, that this was the result of action by Plaintiff because it benefited Plaintiff only.  Notably, in its reply, Plaintiff does not address or respond to the evidence cited by Defendant; indeed, Plaintiff does not address these claims at all.  At this juncture, the Court finds that it is sufficient to survive summary judgment.  The Court DENIES Plaintiff's motion on this counterclaim.

### iii.    Counterclaim Three: Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant brings a counterclaim for breach of the implied covenant of good faith and fair dealing based on Plaintiff's failure to comply with the notification clause.  (Am. Countercl. ¶ 71.) Plaintiff seeks summary judgment because Defendant "has not only failed to produce any evidence, but also shown its own unclean hands."  (Pl.'s Mot. for Summ. J. at 15.)  Plaintiff provides no further analysis or evidence.  The Court DENIES Plaintiff's motion for summary judgment on this counterclaim.

### iv.    Counterclaim Four: Equitable Estoppel and Unclean Hands

Defendant asserts that Plaintiff is equitably estopped from enforcing the Settlement Agreement due to its failure to comply with the notification provision.  (Am. Countercl. ¶ 84.) Defendant further asserts that Plaintiff's breach means that Plaintiff has unclean hands, and is thus precluded from enforcing the Settlement Agreement.  (Am. Countercl. ¶ 85.)  Plaintiff seeks summary judgment because Defendant "has not only failed to produce any evidence, but also shown its own unclean hands."  (Pl.'s Mot. for Summ. J. at 16.)  Again, Plaintiff provides no

United States District Court
Northern District of California

18

1   further analysis or evidence.  The Court DENIES Plaintiff's motion for summary judgment on this

2   counterclaim.

3   <center>**IV.    CONCLUSION**</center>

4          For the reasons stated above, the Court DENIES Plaintiff's motion for partial summary

5   judgment in full.  The Court GRANTS Defendant's motion for partial summary judgment as to the

6   marks "University of Metaphysics," "University of Sedona," and "Theocentric Psychology," but

7   DENIES Defendant's motion for partial summary judgment as to the mark "International

8   Metaphysical Ministry" for any alleged use prior to this mark's cancellation in April 2021.

9          In light of the narrowed scope of this case, the Court encourages the parties to return to

10   settlement negotiations.

11          IT IS SO ORDERED.

12   Dated: September 9, 2022

13                                          KANDIS A. WESTMORE

14                                          United States Magistrate Judge

United States District Court
Northern District of California

19