Valerie F. Horn, Esq. (CSB No. 151161)
VALERIE F. HORN & ASSOCIATES
A Professional Law Corporation
1901 Avenue of the Stars, Suite 1900
Los Angeles, California 90067-1507
Telephone:   (310) 888-8494
Facsimile:    (310) 888-8499
Email: thehornbooklaw@gmail.com

Attorneys for DEFENDANT/COUNTERCLAIMANT
WISDOM OF THE HEART CHURCH, A CALIFORNIA
NON-PROFIT COMPANY D/B/A THE UNIVERSITY
OF METAPHYSICAL SCIENCES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL METAPHYSICAL MINISTRY, INC., an Arizona corporation,<br><br>              Plaintiff,<br><br>vs.<br><br>WISDOM OF THE HEART CHURCH, A CALIFORNIA NON-PROFIT COMPANY D/B/A THE UNIVERSITY OF METAPHYSICAL SCIENCE; and various unknown and/or fictional individuals and entities,<br><br>              Defendants. | **Case No.: 4:21-cv-08066-KAW**<br><br>Judge: Hon. Kandis A. Westmore<br><br>**DEFENDANT WISDOM OF THE HEART CHURCH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[FILED CONCURRENTLY WITH DECLARATIONS OF CHRISTINE BREESE AND VALERIE F. HORN AND REQUEST FOR JUDICIAL NOTICE]**<br><br>TIME: TBD<br>DATE: JULY 20, 2023<br>COURTROOM: TBD |

Defendant Wisdom of the Heart Church dba University of Metaphysical Sciences hereby respectfully submits its Motion for Summary Judgment pursuant to the this Honorable Court's April 20, 2023 Order.

# TABLE OF CONTENTS

**Page**

I. Introduction........................................................... 7

II. Statement of Facts .................................................. 9

    A. At the time the Settlement Agreement was entered into, Three of IMM's Federally Registered Trademarks had Lapsed or Were Invalid .................................................... 9

        1. "University of Sedona" Lapsed Trademark Registration .... 9

        2. "Theocentric Psychology" Lapsed Trademark Registration.. 9

        3. "University of Metaphysics" Invalid Mark Renewed by a Dead Person......................................... 9

        4. "International Metaphysical Ministry" Lapsed Trademark Registration ........................................ 10

    B. UMS'S Active and Current Registered Trademark............. 10

        1. "University of Metaphysical Sciences" Active and Current Trademark ......................................... 10

    C. The First and Second Registered Trademark Actions........... 10

        1. The Original Verified Complaint in the Underlying Action Alleges Trademark Infringement for the 4 Alleged Federally Registered Trademark(s)........................... 10

        2. The Corrected First Amended Complaint In the Underlying Action Alleges Trademark Infringement for the Alleged Federally Registered Trademark(s)..................... 11

        3. The Verified Complaint in This Action Predicates Defendant's Liability Upon the Use of the Federally Registered Trademarks In Violation of Paragraph 7.2 of the Settlement Agreement ............................. 11

    D. The Settlement Agreement ............................... 13

III. Legal Argument ................................................... 15

    A. Standards ............................................. 15

    B. Contract Formation and Requirements ...................... 16

    C. Rescission is the Only Appropriate Remedy Where There is a Mutual Mistake.............................................. 17

        1. The Undisputed Mutual Mistake...................... 18

2.   The Undisputed Facts Show that the Mutual Mistake of Fact was Material to the Transaction . . . . . . . . . . . . . . . . . . . . . . 20

3.   The Undisputed Facts Show that the Mutual Mistake Did Not Result from UMS's Neglect of its Legal Duty . . . . . . . . . . 21

4.   The Undisputed Facts Show That UMS Does Not Bear the Risk of the Mistake . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

5.   UMS Would Not Have Entered into the Settlement Agreement If it Had Known about the Mistake . . . . . . . . . . . . . . . . . . . . 25

D.   IMM's Position That the "Terms" Are Protected Under Paragraph 7.2 Regardless of the USPTO Registration Status Is Not Supported by the Undisputed Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

E.   IMM's Statement of Its Intention At the Time of Entering Into The Settlement Agreement Irrefutably Evidences That There is No Meeting of the Minds Warranting Rescission . . . . . . . . . . . . . . . . . 26

F.   Reformation of the Settlement Agreement is Not an Option Because There is No Meeting of the Minds . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Liberty Lobby Inc.*
477 U.S. 242, 255 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Artiglio v. Corning, Inc.*
18 Cal.4th 604 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*ASP Properties Group v. Fard, Inc.*
133 Cal.App.4th 1257, 1268–69 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Bailard v. Marden*
36 Cal.2d 703, 708 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

*Brunzell Const. Co. v G. J. Weisbrod, Inc.*
134 Cal.App.2d 278 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Celotex v. Catrett*
477 U.S. 317, 323–24. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Donovan v. RRL Corp.*
26 Cal.4th 261, 283 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 24

*Edwards v. Comstock Insurance Co.*
205 Cal.App.3d 1164, 1167-69 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Grenall v. United of Omaha Life Ins. Co.*
165 Cal.App.4th 188, 192–193 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Guthrie v. Times–Mirror Co.*
51 Cal.App.3d 879, 884 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*
41 Cal.App.4th 1410, 1421 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Heidlebaugh v. Miller*
126 Cal.App.2d 35, 38 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

*Huens v. Tatum*
52 Cal.App.4th 259, 264 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*In re Marriage of Hasso*
229 Cal.App.3d 1174, 1181 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Klose v. Sequoia Union High School Dist.*
118 Cal.App.2d 636 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

///

///

*M. F. Kemper Const. Co. v. City of Los Angeles*
   37 Cal.2d 696 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Mosher v. Mayacamas Corp.*
   215 Cal.App.3d 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Van Meter v. Bent Construction Co.*
   46 Cal.2d 588 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


**CALIFORNIA STATUTES**

*California Civil Code § 1636* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*California Civil Code § 1638* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*California Civil Code § 1639* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*California Civil Code § 1640* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*California Civil Code § 1641* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*California Civil Code § 1550* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*California Civil Code §§ 1567–68, 1689(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*California Civil Code § 1577* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*California Civil Code § 3399* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28


**FEDERAL STATUTES**

*15 U.S.C. §1114* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*15 U.S.C. §1116* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


**FEDERAL RULES**

*Federal Rules of Civil Procedure*, Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Federal Rules of Civil Procedure*, Rule 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Federal Rules of Civil Procedure*, Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22

*Federal Rules of Civil Procedure*, Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*///*

*///*

**OTHER AUTHORITIES**

*CACI* 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

Restatement (Second) of Contracts  § 152, com. (a) . . . . . . . . . . . . . . . . . . .   17, 18

*Restatement (Second) of Contracts* § 153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Restatement (Second) of Contracts* § 154 . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 23

*Restatement (Second) of Contracts*  § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

22 Cal.Jur., *Reformation of Instruments*, § 2, p. 710 (1925) . . . . . . . . . . . . . . .   28

# Memorandum of Points and Authorities

## I.    Introduction.

Plaintiff International Metaphysical Ministry ("IMM") has been trying to put Defendant Wisdom of the Heart Church ("UMS") out of business since UMS started a competing school in 2003. Through the use of what is now three federal court litigations, IMM has used the expense of litigation to drive UMS out of business by repeatedly making patently false and unsupportable allegations against UMS that could never be proven in a court of law. In the breach of contract litigation currently before this Court, the Court has identified the mutual mistake of the parties when they entered into the Settlement Agreement, where both UMS and IMM mistakenly believed that the four trademarks listed in paragraph 7.2 of the Settlement Agreement were duly registered trademarks with the USPTO at the time of contracting.

The Court, having identified the mutual mistake, is now tasked with ascertaining the intention of the parties at the time of contracting to determine if there was ever a meeting of the minds. Here, particularly in Plaintiff's supplemental briefs, IMM has informed the Court that its intention when entering into the August 2019 Settlement Agreement was to prohibit UMS from using the 9 words contained in paragraph 7.2, registered or not.  On the other hand, Defendant UMS's sole intention when entering the Settlement Agreement was for each of the parties to protect the registered trademarks identified in the Settlement Agreement, because they were believed to be federally registered with the United States Patent and Trademark Office. With one party entering the Settlement Agreement intending to seek protection for words, registered or not, and the other party intending the same agreement to protect duly active and federally registered trademarks through the USPTO, there was no meeting of the minds as to the material aspects of the Settlement Agreement when it was entered into by the parties.  No agreement was formed, and the Settlement Agreement should now be

1   rescinded.

2   Originally, in this action, IMM alleged in its verified complaint that UMS

3   breached the Settlement Agreement by using IMM's federally registered

4   trademarks, "International Metaphysical Ministry," "University of Sedona," and

5   "University of Metaphysics." That position was echoed in IMM's Initial Rule 26

6   Disclosure Statement tardily served 60 days late in April 2022.  Next, in response

7   to UMS's Motion for Partial Summary Judgment, IMM shifted its position to

8   assert that the term "registered trademarks" included not only currently registered

9   trademarks, but also trademarks that were registered during the course of the 2017

10  action.  Finally, in Plaintiff's supplemental briefs, IMM has most recently

11  expanded its  third position claiming it was IMM's intention to prohibit UMS

12  from using the 9 words contained in paragraph 7.2, registered or not. Taking

13  IMM's third and most recently asserted position and comparing it to Ms. Breese's

14  undisputed testimony that UMS intended when entering into the Settlement

15  Agreement to prohibit the use of only the parties current and active federally

16  registered trademarks, there was no meeting of the minds as to a material aspect of

17  the Settlement Agreement when the parties entered into it, and the Settlement

18  Agreement must be rescinded.

19  Reformation, as suggested by IMM, is not a viable option here because

20  IMM's third position is that UMS was prohibited from using the 9 words

21  articulated in paragraph 7.2, whereas UMS intended that it was prohibited from

22  using only IMM's federally registered, current and active trademarks specifically

23  identified in paragraph 7.2.  Because there is no common understanding between

24  IMM and UMS as to the meaning of paragraph 7.2, the Settlement Agreement

25  cannot be reformed to correct the parties' mutual understanding because no mutual

26  understanding ever existed.

27  ///

28

1

## II.    Statement of Facts.

### A.    At the time the Settlement Agreement was entered into, Three of IMM's Federally Registered Trademarks had Lapsed or Were Invalid.

### 1.    "University of Sedona" Lapsed Trademark Registration.

The Records of the United States Patent and Trademark office show the registered trademark for "University of Sedona," registration number 4078392, serial number 76702581 on the principal register of the United States Patent and Trademark Office,  was canceled on August 10, 2018 and the registration for "University of Sedona" was a "Dead" mark as of August 10, 2018. [Request for Judicial Notice, Exhibit "1"].

### 2.    "Theocentric Psychology" Lapsed Trademark Registration.

The Records of the United States Patent and Trademark office show the registered trademark for "Theocentric Psychology," registration number 4027310, serial number 86526162 on the principal register of the United States Patent and Trademark Office,  was abandoned on September 8, 2015. [Request for Judicial Notice, Exhibit "2"]

The Records of the United States Patent and Trademark Office show the registered trademark for "Theocentric Psychology," registration no. 4027310, serial number 85304216 on the supplemental register of the United States Patent and Trademark Office, which was canceled on April 20, 2018 and that the registration for "Theocentric Psychology" was a "Dead" mark as of April 20, 2018. [Request for Judicial Notice, Exhibit "3"].

### 3.    "University of Metaphysics" Invalid Mark Renewed by a Dead Person.

The Records of the United States Patent and Trademark Office show the registered trademark for "University of Metaphysics," registration no. 3322153, serial no. 76663832, on the principal register, which was renewed by "Paul Leon Masters" on April 27, 2018, by attorney Linda Wallace, two years and four

months after Paul Leon Masters died in January 2016. [Request for Judicial Notice, Exhibit "4"][Dkt. No. 1, ¶2 (4:18-cv-04524-SBA) ]

**4.    "International Metaphysical Ministry" Lapsed Trademark Registration.**

The Records of the United States Patent and Trademark Office show the registered trademark for "International Metaphysical Ministry," registration number 4608338, serial number 80635378 on the principal register of the United States Patent and Trademark Office was canceled on April 30, 2021, and that the registration for "International Metaphysical Ministry was a "Dead" mark as of April 30, 2021. [Request for Judicial Notice, Exhibit "5"]

**B.    UMS'S Active and Current Registered Trademark.**

**1.    "University of Metaphysical Sciences" Active and Current Trademark.**

The Records of the United States Patent and Trademark Office show the registered trademark/service mark for "University of Metaphysical Sciences" registration number 3637344, serial number 77296403, is active and live. [Request for Judicial Notice, Exhibit "6"][1]

**C.    The First and Second Registered Trademark Actions.**

**1.    The Original Verified Complaint in the Underlying Action Alleges Trademark Infringement for the 4 Alleged Federally Registered Trademark(s).**

The Verified Complaint in the underlying action briefly entitled *International Metaphysical Ministry, etc., et al. v. Wisdom of the Heart Church et al.*, United States District Court Case Number 4:18-cv-04524-SBA (the "Underlying Action"), alleges a claim for violation of *15 U.S.C.* §1114 in the sixth count for relief, relating solely to a claim for infringement of ***registered***

---

1.    On May 24, 2022, UMS also obtained a Standard Character Mark, registration number 6721246, serial number 90376242, which is active and current. [Request for Judicial Notice, Exhibit "7"]

1    *trademarks*.  [Dkt. No. 1 in 4:18-cv-04524-SBA, ¶¶248-255]. [2]

2        In the Underlying Action, the Clerk of the Court filed a Report on the Filing

3    or Determination of an Action Regarding a Patent or Trademark with the U.S.

4    Patent & Trademark Office in compliance with *15 U.S.C.* §1116 advising the

5    USPTO that a court action has been filed in the USDC Northern District of

6    California involving federally "registered" trademarks.  [Dkt. No. 57,

7    4:18-cv-04524].

8        **2.**    **The Corrected First Amended Complaint In the Underlying**
     **Action Alleges Trademark Infringement for the Alleged**

9               **Federally Registered Trademark(s).**

10       Furthermore, according to the allegations set forth in the Corrected First

11   Amended Complaint in the Underlying Action, only the registered trademarks

12   were at issue. [Dkt 83, ¶¶18, 20, 22, 23, 26, 27, and 28].  The Corrected First

13   Amended Complaint then goes on to allege numerous additional paragraphs

14   regarding the aforementioned federally registered trademarks (See ¶¶80, 103, 113,

15   116, 119, 120, 121, 122, 123, 124, 128, 129, 130, 151, 152, 154, 155, 162, 163,

16   165, in IMM's Registered Trademark Infringement Claim under *15 U.S.C.* §1114

17   in the sixth count for relief in ¶¶170-180 for infringement of the registered

18   trademarks, and additionally in  ¶¶185, 186, 187). [Dkt. No. 83]

19       **3.**    **The Verified Complaint in This Action Predicates Defendant's**
     **Liability Upon the Use of the Federally Registered Trademarks**

20              **In Violation of Paragraph 7.2 of the Settlement Agreement.**

21       In or about October 2021, IMM filed the Verified Complaint in this action

22   alleging that UMS had breached the Settlement Agreement by using IMM's

23   ————————————————

24   2.   *15 U.S.C.* §1114 provides in pertinent part: (1) Any person who shall,
          without the consent of the registrant— (a)use in commerce any

25        reproduction, counterfeit, copy, or colorable imitation of a <u>registered</u>

26        <u>mark</u> in connection with the sale, offering for sale, distribution, or
          advertising of any goods or services on or in connection with which

27        such use is likely to cause confusion, or to cause mistake, or to

28        deceive; . . . (Emphasis added)

1   federally registered trademarks in violation of paragraph 7.2 of the Settlement

2   Agreement notwithstanding that three of IMM's trademark registrations were

3   dead ("International Metaphysical Ministry," "University of Sedona," and

4   "Theocentric Psychology,") and the fourth registered trademark was invalid and

5   unenforceable ("University of Metaphysics"), and by allegedly disparaging IMM

6   in violation of paragraph 5 of the Settlement Agreement. [Dkt. No. 1]

7           But, regardless of the true status of the IMM's trademarks, the Verified

8   Complaint confirms that the alleged breach of the Settlement Agreement and

9   claim for injunctive relief is only based upon Defendant's use of IMM's alleged

10  registered trademarks. To wit, the Verified Complaint at 1:6-7 states: "This prior

11  action involved UMS's alleged infringement of IMM's registered marks. . . [Dkt.

12  No. 1] Similarly, the Verified Complaint in this action states at 2:18-23:

13  "Specifically, UMS was using University of Metaphysics, University of Sedona,

14  International Metaphysical Ministry, and abbreviations thereof (UOM, IMM and

15  UOS), in their Google ads and headlines for ads both in the United States and

16  abroad.  But the Settlement agreement expressly prohibited the use by either IMM

17  or UMS of their competitor's registered marks or abbreviations thereof as

18  advertising headlines." [Dkt. No. 1] Similar allegations are made in other parts of

19  the  the Verified Complaint. [Dkt 1, ¶10, ¶16  ¶98, ¶102, ¶103, ¶136, ¶138, and

20  ¶148(b)].]

21          On November 22, 2021, UMS filed its Answer to the Complaint, where it

22  alleged 18 separate affirmative defenses. [Dkt 23]  Defendant's affirmative

23  defense no. 13 alleges: "Plaintiff is barred from enforcing certain terms of the

24  Settlement Agreement and/or implied covenant of good faith because there was a

25  lack of meeting of the minds as to some of the terms of the Settlement

26  Agreement." [Dkt. No. 23, ¶13, 15:14-16].

27  ///

28

**D.     The Settlement Agreement**.

The parties settled the underlying case on August 9, 2019. At that time, both IMM's principal, Michele Behr, and UMS's principal, Christine Breese mistakenly believed that the four trademarks listed in paragraph 7.2 of the Settlement Agreement were current and active registered trademarks through the USPTO, when they signed the Settlement Agreement, when they were not. [Michelle Behr Deposition 58:15 – 59:8; 61:23 - 62:8][Dkt 127-1, ¶¶2-6]

When Defendant Breese was presented with the Settlement Agreement for signature, she was unaware that in exchange for protection of her one active, valid and federally registered trademark, she was being asked to reciprocally protect what UMS believed to be live, valid and federally registered trademarks, that unbeknownst to UMS, in true fact did not exist. Had she known, IMM's marks were not federally registered with the USPTO at the time of contracting, Defendant would never have signed the Settlement Agreement prohibiting it from using those trademarks open for use by everyone else in the world. [Dkt 127-1, ¶¶7-9]

The term "registered trademark" is a term of art and is not susceptible to any different meaning. It means: A trademark that is registered on one of the two federal registers, the Principal Register or the Supplemental Register of the United States Patent and Trademark Office.  Moreover, UMS had good reason to believe the trademarks listed in the operative verified complaint and thereafter in paragraph 7.2 of the Settlement Agreement were active and current federally registered trademarks.  The operative complaints in the underlying and current actions were subject to *Federal Rule of Civil Procedure* Rule 11 which states that by signing the complaint an attorney certifies that, "(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery."  There was no reason to dispute Mr. Goodman's allegations certified

in two verified complaints and one unverified first amended complaint. Also, at

the settlement conference in the Underlying Action on June 10, 2019, the Court

recited and reaffirmed the material terms of the parties' settlement, stating in

pertinent part, as follows:

> Defendant agrees not to use any of the Plaintiff's registered trademarks in
> any way or to use the initials IMM, UOM, or UOS in any way, ……".

[See Ex. 1 to the Horn Declaration, 5:11-23]

The in-court, on the record recitation of the settlement is consistent with

Defendant's belief that the parties intended only the "registered trademarks" to be

prohibited from use by the other party by virtue of the settlement, and that those

trademarks were properly registered and current with the United States Patent and

Trademark Office. [See Ex. 1 to the Horn Declaration, 5:11-23]

In the settlement agreement itself, under the section entitled paragraph "7,"

that header reads "7. Use of the Parties' Registered Trademarks or Abbreviations

Thereof. " (Emphasis added) The first paragraph of section 7 reads: "The Action

concerned the allegedly improper use of the Parties' registered trademarks in

marketing of the Parties institutions."  (Emphasis added) Then, paragraph 7.1 goes

on to read: "Plaintiffs agree not to use any of Defendant UMS's registered

trademarks in any way…".  Paragraph 7.2 reads: "Defendant agrees not to use any

of the Plaintiffs' registered trademarks, which include University of Metaphysics,

University of Sedona, International Metaphysical Ministry, and Theocentric

Psychology, in any way, and further agrees not to use the abbreviations thereof

such as IMM, UOM, or UOS in any way,…."

Here, paragraph 7.2 was expressly limited to "registered trademarks."

There is no other interpretation that can be reasonably proffered. If the parties had

intended that unregistered trademarks, or trademarks subject to pending

application, they could have easily so stated.  The word "registered trademark" is

clear on its face.  Inasmuch as the Settlement Agreement was intended to resolve registered trademark disputes alleged in the Complaints, the subject of the Settlement Agreement could only have pertained to registered trademarks.

Nevertheless, IMM's current position is that it intended at the time of contracting to prohibit the 9 words identified in paragraph 7.2, registered or not, leading the Court to the inescapable conclusion that there was no meeting of the minds with respect to paragraph 7.2 of the Settlement Agreement.

## III.   Legal Argument.

### A.   Standards.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett* 477 U.S. 317, 323–24.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion...." Id. at 323. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." *Fed.R.Civ.P.* 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

1        **B.      Contract Formation and Requirements**.

2        The formation of a contract requires parties capable of consent to mutually

3   assent to the agreement. *Cal. Civ.Code* § 1550; *ASP Properties Group v. Fard,*

4   *Inc.*, 133 Cal.App.4th 1257, 1268–69 (2005). "Mutual assent is determined under

5   an objective standard applied to the outward manifestations or expressions of the

6   parties, i.e., the reasonable meaning of their words and acts, and not their

7   unexpressed intentions or understandings." ASP Properties, 133 Cal.App.4th at

8   1269 (2005).  A contract is voidable and subject to rescission for lack of mutual

9   assent when consent to the contract was the result of a mutual mistake of fact.

10  (*Cal. Civ.Code* §§ 1567–68, 1689(b); *Guthrie v. Times–Mirror Co.*, 51

11  Cal.App.3d 879, 884 (1975). Under *California Civil Code* § 1577, a mistake of

12  fact is: a mistake, not caused by the neglect of a legal duty on the part of the

13  person making the mistake, and consisting in: (1) An unconscious ignorance or

14  forgetfulness of a fact past or present, material to the contract; or (2) Belief in the

15  present existence of a thing material to the contract, which does not exist, or in the

16  past existence of such a thing, which has not.

17       In addition, a settlement agreement is treated as a contract and is subject to

18  all contractual requirements. *Huens v. Tatum*, 52 Cal.App.4th 259, 264 (1997); *In*

19  *re Marriage of Hasso*, 229 Cal.App.3d 1174, 1181 (1991). The interpretation of a

20  settlement agreement is governed by the same rules that guide the court's review

21  of any other contract. *Edwards v. Comstock Insurance Co.*, 205 Cal.App.3d 1164,

22  1167-69 (1988). In general, these rules require that: (1) A contract is to be

23  interpreted as to give effect to the mutual intention of the parties as it existed at

24  the time of contracting, so far as the same is ascertainable and lawful, see *Cal.*

25  *Civ. Code* § 1636; (2) The language of a contract is to govern its interpretation, if

26  the language is clear and explicit, and does not involve an absurdity, see *Cal. Civ.*

27  *Code* § 1638; (3) When a contract is reduced to writing, the intention of the

28

parties is to be ascertained from the writing alone, if possible, see *Cal. Civ. Code* § 1639; and (4) the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other, see *Cal. Civ. Code* § 1641.

Protection of each party's registered trademarks was the whole purpose of the Settlement Agreement because it resolved all the trademark infringement allegations in the underlying action. The clear language in every portion of the Settlement Agreement pertains solely to registered trademarks.

### C. Rescission is the Only Appropriate Remedy Where There is a Mutual Mistake.

To establish a claim for rescission based on mutual mistake, UMS must prove all of the following: (1) at the time the contracts were executed, both parties were operating under a mistake of fact; (2) the mistake was material to the transaction; (3) the mistake did not result from UMS's neglect of its legal duty; (4) UMS does not bear the risk of the mistake; and (5) UMS would not have entered into the contract if it had known about the mistake. *CACI* 1331 (as modified); *Donovan v. RRL Corp.*, 26 Cal.4th 261, 283 (2001); *Restatement (Second) of Contracts* § 154; *Grenall v. United of Omaha Life Ins. Co.*, 165 Cal.App.4th 188, 192–193 (2008). Relief is appropriate only in situations where a mistake of both parties has such a material effect on the agreed exchange of performances so as to upset the very basis for the contract. *Rest.2d Contracts* § 152, com. (a).

A "mistake of fact" is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting of (a) an unconscious ignorance or forgetfulness of a fact past or present, material to the contract or (b) belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed. *Cal. Civ. Code* § 1577.   To support rescission, a mistake must be as to an "objective,

existing fact." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal.App.4th 1410, 1421 (1996); see also *Mosher v. Mayacamas Corp.*, 215 Cal.3d 1, 5 (1989) (mistake of fact must be a mistake as to past or present facts about which the parties are ignorant or mistaken); *Rest.2d Contracts* § 152, com. (a) (mistake that will support rescission does not include an "improvident act, including the making of a contract, that is the result of ... an erroneous belief ... [or] the erroneous predictions or judgments about future events; the mistake 'must relate to the facts as they exist at the time of the making of the contract.' ").

### 1. The Undisputed Mutual Mistake.

Christine Breese, principal of UMS, testified that when she executed the Settlement Agreement on or about August 9, 2019, she was under the good faith belief that the words, "International Metaphysical Ministry," "University of Metaphysics," "University of Sedona," and "Theocentric Psychology" were duly registered trademarks through the United States Patent and Trademark Office, and that those registered trademarks were active and belonged to the Paul Masters Living Trust, which had granted an exclusive license to use those registered trademarks to International Metaphysical Ministry. [Dkt No. 127-3, ¶3]

Michelle Behr, President, CEO and Director of IMM testified that the Paul Leon Masters Trust was the owner of the "4 registered trademarks" listed in paragraph 7.2 when the Settlement Agreement was entered into as follows:

Q. So, now, I'm going to go to the settlement, which is marked as Exhibit 21. Ma'am have you ever seen this document before?

A. Yes

Q. So , I think we've established that you claim that at the time the settlement agreement was entered into, the trust was the owner of the four mark – alleged four registered marks at issue, is that correct?

A. Correct.

Q.So, when it says here, Defendant agrees not to use any of the Plaintiffs' registered marks. And Plaintiffs are referred to as International Metaphysical Ministry and the Paul Leon Masters Living Trust. Is it your testimony that at the

time that this agreement was entered into, that the trust was the owner of the four registered marks?

A. Yes.

[Michelle Behr Deposition 58:15 - 59:8]

Q.You testified that at the time that the agreement was entered into in September 9, 2019, that the owner of the four registered marks at issue was the trust. Do you remember that testimony?

A. Yes.

Just as Michelle Behr believed the 4 marks, "University of Metaphysics," "University of Sedona," International Metaphysical Ministry," and "Theocentric Psychology," were duly registered trademarks with the USPTO at that time Settlement Agreement was entered into, so too did Christine Breese. [Dkt. No. 127-1, ¶3] Indeed, that is what the Corrected First Amended Complaint filed in the underlying action on January 24, 2019 represented to the parties, the Court, and that is what the parties believed when they entered into the Settlement Agreement. [Dkt No. 83]

The parties made a mutual mistake of fact where each party mistakenly believed that 4 marks, "University of Metaphysics," "University of Sedona," International Metaphysical Ministry," and "Theocentric Psychology," were duly registered trademarks and active with the USPTO at that time Settlement Agreement was entered into, when they were not. In true fact,  "Theocentric Psychology" was canceled on April 20, 2018, and was a "Dead" mark from that date forward. [Request for Judicial Notice, Exhibit 3] The registered trademark for "University of Metaphysics," registration no. 3322153, serial no. 76663832,was invalid because  it was renewed by "Paul Leon Masters" on April 27, 2018, two years and four months after he  died in January 2016.  [Request for Judicial Notice, Exhibit 4].  The "University of Sedona," registration number 4078392, serial number 76702581 was canceled on August 10, 2018 and was a "Dead" mark as of August 10, 2018.  [Request for Judicial Notice, Exhibit 1] The registered

1  trademark for "International Metaphysical Ministry," registration number

2  4608338, serial number 80635378 was canceled on April 30, 2021, , and was a

3  "Dead" mark as of April 30, 2021.[Request for Judicial Notice, Exhibit 5]

4      The only federally registered trademark belonging to IMM that was actually

5  active and valid at the time the Settlement Agreement was entered into was

6  "International Metaphysical Ministry."

7        **2.     The Undisputed Facts Show that the Mutual Mistake of Fact was Material to the Transaction.**

8

9      The mutual mistake of fact pertains to the use of the phrase "registered

10  trademark" used in paragraph 7 of the Settlement Agreeement. The word

11  "registered trademark" was expressly used by Plaintiff in each of its complaints,

12  and by the Court in reciting the on the record settlement in June 2019.  To wit, the

13  transcript from the on the record settlement states: "Second, the Defendant agrees

14  not to use any of the Plaintiff's registered trademarks in any way or to use the

15  initials IMM, UOM, or UOS in any way, . . ." [See Ex. "1" to the Horn Dec.]

16      Moreover, the word "registered trademark" was used six times in the

17  Settlement Agreement in paragraph 7. [See Ex. "2" to the Horn Dec.]  Under

18  paragraph 7 of the settlement agreement containing paragraph 7.2 at issue, the

19  parties themselves agreed that the "registered trademarks" was an indispensable

20  and material to the transaction, where they agreed that not using each other's

21  registered trademarks was: "As an integral part of this Settlement Agreement."

22  [See Ex. "2" to the Horn Dec.]  Synonyms for the word "integral" are

23  "indispensable," "essential," and "necessary."

24      Furthermore, in the first draft of the Settlement Agreement circulated by

25  Christopher Goodman, and in each draft thereafter until the final draft, the word

26  "registered trademark" was used six times in paragraph 7 in each draft of the

27  settlement agreement culminating in the final agreement. [See Exs. "3" to "6" to

28  Horn Dec.]

Finally, Michelle Behr testified over and over again at her deposition that protecting IMM's registered trademarks was paramount to IMM under the settlement agreement [" . . . I only was – became aware of the actual expiration of the trade after – after it had expired, and then immediately we put into motion to get that take care of." [M. Behr depo 48:7-11; see Ex. "7" to the Horn Dec.]["They did violate using our trademarks, international Metaphysical Ministry, University of Sedona, and University of Metaphysics.  Those are the names we operate under, and they have no right to use our trademark names in any of their advertising and they have violated that." [M. Behr Depo 69:8-13, See Ex. "7" to Horn Dec.]

**3.   The Undisputed Facts Show that the Mutual Mistake Did Not Result from UMS's Neglect of its Legal Duty.**

Only where the mistake results from "a failure to act in good faith and in accordance with reasonable standards of fair dealing" is rescission unavailable. (*Rest.2d Contracts* § 157.) This section, consistent with the California decisions cited in the preceding paragraph, provides that a mistaken party's failure to exercise due care does not necessarily bar rescission under the rule set forth in section 153.  In determining what conduct will amount to a neglect of duty the courts recognize there is an element of carelessness in nearly every case of mistake (*Van Meter v. Bent Construction Co.*, 46 Cal.2d 588 (1956), and that which does not amount to the neglect of a legal duty will not of itself bar rescission where the mistake does not stem from an original error in judgment. *Brunzell Const. Co. v G. J. Weisbrod, Inc.*, 134 Cal.App.2d 278 (1955); *M. F. Kemper Const. Co. v. City of Los Angeles*, 37 Cal.2d 696 (1951); *Klose v. Sequoia Union High School Dist.*, 118 Cal.App.2d 636 (1953). This rule is particularly applicable in a situation in which false representations were made to induce the execution of the instrument, even though the person making them believed them to be true. Whether a legal duty is present in a particular case is a question of law for the court. (*Artiglio v. Corning, Inc.*, 18 Cal.4th 604 (1998).)

1    UMS had no legal duty to IMM to investigate the status of IMM's

2    registration of IMM's trademarks, UMS had no legal duty to IMM to discover the

3    defects in IMM's trademark registration status, UMS had no legal duty to IMM to

4    inform IMM about the status of the registration of IMM's trademarks, UMS had

5    no legal duty to IMM to otherwise assure that IMM's registration status was

6    current and active when IMM and UMS entered into the Settlement Agreement

7    Additionally, IMM represented in its verified complaint filed December 28, 2017,

8    that Paul Masters Trust owned "United States Trademark Registrations for the

9    marks `International Metaphysical Ministry®' (No. 4,608,338), `Theocentric

10   Psychology®' (No. 4,027,310), and `The University of Sedona®' (No.

11   4,078,392).'" [Dkt 1, ¶22] . UMS reasonably relied upon IMM's counsel's

12   certification of the pleadings under Rule 11 of the *Federal Rules of Civil*

13   *Procedure*.

14       When IMM served its Mandatory Initial Discovery Responses in the first

15   underlying action on March 23, 2018 (3:17-cv-08280-JJT), it represented again

16   "The Trust owns and exclusively permits IMM to use the registered trademarks

17   International Metaphysical Ministry, Theocentric Psychology, The University of

18   Metaphysics, and The University of Sedona." [See Ex. "8" to the Horn Dec, 7:5-7]

19   When IMM filed the First Amended Complaint in the Underlying Action filed on

20   January 25, 2019, IMM represented that "`International Metaphysical Ministry' is

21   a federally registered trademark" [Dkt 83, ¶18], that "`University of Metaphysics'

22   is a federally registered trademark" [3][Dkt 83, ¶20], and that "`University of

---

25   3.    At the time of the filing of the First Amended Complaint on January
26         25, 2019, "University of Metaphysics" had been renewed by a dead
           person in April 2018, almost 2 ½ years after the registrant died. [Dkt.
27         No. 1, ¶2 (4:18-cv-04524-SBA)] [Request for Judicial Notice, Exhibit
28         4]

1   Sedona'[4] is a federally registered trademark." [Dkt 83, ¶22]

2       Contrary to IMM's unsupported speculation in its Supplemental Brief that

3   UMS knew that the mark for "Theocentric Psychology" had lapsed because it was

4   omitted from the First Amended Complaint in the underlying action, UMS had

5   absolutely no understanding as to why IMM's First Amended Complaint dropped

6   "Theocentric Psychology" from paragraph 22 of the original verified complaint

7   [Dkt 1, ¶22] to the First Amended Complaint, why the original verified complaint

8   omitted "University of Metaphysics" [Dkt 1, ¶22] but added "University of

9   Metaphysics" to the First Amended Complaint [Dkt No. 83], or why IMM's

10  counsel made any of the other pleading machinations that IMM went through

11  between the original Verified Complaint and the First Amended Complaint in the

12  underlying action.[See C. Breese Dec. ¶2]

13      Finally, in the actual Settlement Agreement, IMM again represented that it

14  was the owner of the "registered trademarks" "University of Metaphysics,"

15  "University of Sedona," "International Metaphysical Ministry," and "Theocentric

16  Psychology." [See Ex. "9" to the Horn Dec.]  The mutual mistake where both

17  parties erroneously believed that the trademarks listed in paragraph 7.2 were

18  current and active "registered trademarks" with the USPTO when they signed the

19  Settlement Agreement was not the result of UMS's neglect of a legal duty owed to

20  IMM.

21          **4.    The Undisputed Facts Show That UMS Does Not Bear the Risk of
               the Mistake.**

22
23      *Restatement Second of Contracts*, section 154 states: "A party bears the risk

24  of a mistake when [¶] (a) the risk is allocated to him by agreement of the parties,

25  _____

26  4.     At the time of the filing of the First Amended Complaint on January
         25, 2019, the federal trademark registration for "University of
27       Sedona" had already lapsed in April 2018, when the First Amended
         Complaint proclaimed that IMM owned that "registered trademark."
28       [Request for Judicial Notice, Exhibit 4][Dkt. No. 83, ¶]

1    or [¶] (b) he is aware, at the time the contract is made, that he has only limited

2    knowledge with respect to the facts to which the mistake relates but treats his

3    limited knowledge as sufficient, or [¶] (c) the risk is allocated to him by the court

4    on the ground that it is reasonable in the circumstances to do so." (*Donovan*,

5    supra, 26 Cal.4th at p. 283.) The court then observed that the risk of mistake must

6    be allocated to a party when the mistake results from that party's "neglect of a

7    legal duty." (*Donovan*, supra, 26 Cal.4th at p. 283.) That is, it is reasonable under

8    the circumstances to allocate the risk to the party who had neglected a legal duty.

9    But, as discussed above, there is no evidence that UMS neglected a legal duty.

10       The hard fact is that someone has to bear the risk of the mistake. Should it

11   be the person who negotiated a reasonable settlement with the other party and

12   received confirmation that the settlement was a done deal? Or should it be the

13   party whose error caused the problem and who is nevertheless coming out roughly

14   even?

15       Here, it is only fair that IMM bears the risk of the mutual mistake, not UMS.

16   IMM represented and certified in its pleadings over and over again that it owned

17   the 4 federally registered trademarks contained in paragraph 7.2, when it did not.

18   IMM is solely responsible for creating the mutual mistake and it must bear the risk

19   of loss.  As Michele Behr testified at her deposition " . . . I only was – became

20   aware of the actual expiration of the trade after – after it had expired, and then

21   immediately we put into motion to get that take care of." [M. Behr depo 48:7-11;

22   see Ex. "7" to the Horn Dec.] Neither UMS nor IMM were aware that of the 4

23   "registered trademarks" listed in paragraph 7.2, two had already lapsed when the

24   settlement agreement was signed, one was renewed by a dead person 2 ½ years

25   after he died, and the fourth one lapsed about 2 years after the settlement

26   agreement was entered into.

27   ///

28

1   It was up to IMM to make sure that its trademarks were registered, active

2   and current to obtain the protection the parties agreed to under paragraph 7.2 or to

3   disclose the true status of their purported trademarks, when the Settlement

4   Agreement was entered into.  IMM must bear the risk of the mistake.

5   **5.   UMS Would Not Have Entered into the Settlement Agreement If it Had Known about the Mistake.**

6   Here, the undisputed testimony of Christine Breese states that UMS would

7   never have entered into the settlement agreement if she had known when she

8   "entered into the Settlement Agreement, that prior to entering into the Settlement

9   Agreement, and prior to the filing of the Corrected First Amended Complaint, the

10  "registered trademarks" "University of Sedona" and "Theocentric Psychology"

11  had lapsed and were no longer active, and that the "registered trademark" for

12  "University of Metaphysics" was renewed by a dead person, i.e. Paul Leon

13  Masters, two and a half years after Paul Masters died, I [UMS] would not have

14  agreed to paragraph 7.2" and that it was UMS's intention "at the time of entering

15  into the Settlement Agreement on August 9, 2019, that only the `registered

16  trademarks' that were active through the USPTO at the time of signing the

17  Settlement Agreement, would receive protection under paragraphs 7.1 and 7.2 of

18  the Settlement Agreement." [Dkt 127-1, ¶¶7-8]

19  Under the undisputed facts presented above, rescission of the Settlement

20  Agreement is the only correct action where there was no meeting of the minds

21  concerning paragraph 7.2, an essential and material term of the Settlement

22  Agreement.

23  **D.   IMM's Position That the "Terms" Are Protected Under Paragraph 7.2 Regardless of the USPTO Registration Status Is Not Supported by the Undisputed Evidence.**

24

25  IMM wrongly posits that "the intent of the parties was to protect those

26  terms" [Dkt. No. 141, 3:25-26] contained in paragraph 7.2 in arguing that the

27  Settlement Agreement should be reformed to omit the words "registered

28

1   trademarks".  That argument leads to an absurd result that was never intended by
2   UMS and the Settlement Agreement cannot be reformed as IMM suggests.
3   Without being cheeky or sarcastic, and all due respect to the Court and the
4   seriousness of this matter, here, although IMM never specifically identified what
5   words they are even referring to, from what can be gleaned from their initial
6   supplemental brief and second supplemental brief, IMM seeks reformation to
7   prevent UMS from using the following "terms" or words contained in paragraph
8   7.2: 1) University; 2) of; 3) Sedona; 4) International; 5) Metaphysical; 6) Ministry;
9   7) Metaphysics; 8) Theocentric; and 9) Psychology.

10      IMM's position, however, that the nine "terms" contained in paragraph 7.2
11  were prohibited from UMS's use under the Settlement Agreement, would preclude
12  UMS from using its very own registered trademark "University of Metaphysical
13  Sciences" and was never intended by nor agreed to by UMS. Here, UMS's very
14  own registered trademark contains three of the prohibited words that IMM proffers
15  UMS cannot use.  According to the records of the USPTO, UMS has both an
16  active and current registered service mark and registered word mark under the
17  name "University of Metaphysical Sciences." [Request for Judicial Notice,
18  Exhibits "6" and "7"]

19      IMM assertion that UMS was prohibited from using three of the words
20  contained in its very own registered trademarks is absurd and was never intended
21  by UMS.  There is no evidence whatsoever, let alone undisputed facts, that UMS
22  intended to prohibit the use of three words contained in its very own registered
23  trademarks.  IMM's argument to the contrary is nonsensical and must be rejected
24  by the Court.

25      **E.    IMM's Statement of Its Intention At the Time of Entering Into
        The Settlement Agreement Irrefutably Evidences That There is
26      No Meeting of the Minds Warranting Rescission.**

27      A closer analysis of IMM's statement of intent raises more questions than

28

answers. It is unclear whether they are talking about words, terms, phrases, IMM's intent is unclear whether the words, terms or phrases have to be registered or unregistered. If the Plaintiff itself is at this late stage of litigation unable to clarify its intention when the Settlement Agreement was entered into,  then it had no clear intention at the time of contracting.

Here, Plaintiff has gone from first stating that it was their intention to protect registered trademarks [Dkt No. 140-1, ¶3, Exhibit "2" 3:19-23 "Also as a part of IMM's investigation, IMM began to notice that certain Google searches would return UMS pages as results, but the UMS headlines or descriptions contained IMM's registered trademarks.  This practice is a clear violation of another clause of the Settlement Agreement . . ."], to their intention to protect trademarks that were once registered in 2017 ["Here, the face of the agreement unambiguously supports that, by enumerating four trademarks as examples of "registered trademarks" even though two of the marks were unregistered at the time, both parties still intended to prohibit Defendant from using them. `Registered Trademarks' thus includes not only currently registered trademarks, *but also trademarks that were registered during the course of the 2017 Action*. (Emphasis in original) Dkt. 65, 14:16-20] ¶¶The only way to interpret this section [7.2] reasonably is thus to interpret "registered trademarks" as including trademarks existing during the course of the 2017 Action." [Dkt No. 65, 15:26-27], to now protecting "terms" registered or not [Dkt141, 3:8].

As the Court has probably surmised by now, Plaintiff's intent has been evolving as the litigation progresses and is a moving target. There is nothing for the Court to rely on that points to Plaintiff's intention at the time the Settlement Agreement was entered into.  If one party to an agreement has no clear intention at the time of entering into a contract, there cannot possibly be a mutual intention of a mutual meeting of the minds, which is the case here. The Settlement Agreement

must be rescinded.

**F.   Reformation of the Settlement Agreement is Not an Option Because There is No Meeting of the Minds.**

"When, through ... mistake ..., a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." (*Civ. Code* § 1640.) If there is "a mutual mistake of the parties," a written contract "may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." (Id., § 3399.) In reforming the written agreement, a court may "transpose[ ], reject[ ], or suppl [y]" words (*Heidlebaugh v. Miller* 126 Cal.App.2d 35, 38 (1954)), but has " 'no power to make new contracts for the parties' " (*Bailard v. Marden* 36 Cal.2d 703, 708 (1951), quoting 22 Cal.Jur., *Reformation of Instruments*, § 2, p. 710 (1925).)  Rather, the court may only reform the writing to conform with the mutual understanding of the parties at the time they entered into it, if such an understanding exists. *(Bailard*, at p. 708.)

Here, the undisputed evidence shows that UMS's intent at the time of entering into the Settlement Agreement was to prohibit the use of the parties' current and active federally registered trademarks only. [127-1, ¶¶2 - 8] Although IMM has not proffered any evidence to support its metamorphasized third and current position that IMM intended to prohibit the use of "terms that were both registered and unregistered," there is no meeting of the minds on a material aspect of the transaction.  UMS intended when it entered into the Settlement Agreement to prohibit the use of only current and active federally "registered trademarks," [127-1, ¶¶2 - 8] but IMM intended when it entered into the Settlement Agreement, to prohibit the use of the 9 words contained in paragraph 7.2, registered or not.

Although both parties were mistaken as to the registration status of the four trademarks International Metaphysical Ministry, Theocentric Psychology,

University of Metaphysics, and University of Sedona when they entered into the
Settlement Agreement, where the undisputed evidence shows that both Ms. Breese
and Ms. Behr mistakenly believed that all four marks in paragraph 7.2 were
registered with the USPTO when they were not, there is no common ground here
and no meeting of the minds where IMM intended to protect 9 words, registered or
not, but UMS intended to protect only currently and active registered trademarks.

Thus, the Settlement Agreement cannot be reformed to reflect the mutual
intention of the parties because there never was a mutual understanding of
paragraph 7.2.  There is simply no common intent, regardless of what IMM's rank
speculation of what UMS's prior counsel knew or did not know.

**IV.    Conclusion.**

Based on the foregoing argument, Defendant UMS respectfully request for
the Court to grant Defendant's Motion for Summary Judgment, grant rescission of
the Settlement Agreement, and dismissed Plaintiff's Complaint

DATED: May 22, 2023            VALERIE F. HORN & ASSOCIATES
                               A PROFESSIONAL LAW CORPORATION


                                   /s/ Valerie F. Horn
                               BY:_____
                                   Valerie F. Horn