UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL METAPHYSICAL MINISTRY, INC., <br><br> Plaintiff, <br><br> v. <br><br> WISDOM OF THE HEART CHURCH, <br><br> Defendant. | Case No. 21-cv-08066-KAW <br><br> **ORDER RE MOTION TO DISMISS** <br><br> Re: Dkt. No. 188 |

Plaintiff International Metaphysical Ministry, Inc. ("IMM") filed the instant suit against Defendant Wisdom of the Heart Church ("UMS"), alleging the breach of an August 9, 2019 Settlement Agreement. (Amend. Compl. at 2-4, Dkt. No. 1.) Pending before the Court is UMS's motion to dismiss for lack of subject matter jurisdiction. (UMS Mot. to Dismiss, Dkt. No. 188.) Specifically, UMS contends that IMM is a California citizen, such that there is no diversity of citizenship. (*Id.* at 2.) The Court deems the matter suitable for disposition without a hearing and VACATES the September 5, 2024 hearing. Having considered the parties' filings and the relevant legal authorities, the Court DENIES UMS's motion to dismiss.

**I.  BACKGROUND**

The relevant facts are largely undisputed. On December 22, 1989, IMM filed articles of incorporation with the California Secretary of State.[1] (UMS RJN, Exh. 1. Dkt. No. 188.) In 2014, IMM filed articles of domestication in Arizona. (UMS RJN, Exh. 4.) On May 15, 2014, IMM's

---

[1] The parties both file requests for judicial notice of various governmental records regarding IMM's corporate status. *See Rupert v. Bond*, 68 F. Supp. 3d 1142, 1155 (N.D. Cal. 2014) (taking judicial notice of documents in the public record or information contained on a government website).

articles of domestication were approved in Arizona. (UMS RJN, Exh. 4.) On May 13, 2019, IMM filed a certificate of dissolution in California. (UMS RJN, Exh. 7.)

In August 2019, the parties executed the Settlement Agreement. IMM alleges that shortly thereafter, UMS began violating the Settlement Agreement. (Am. Compl. at 3-4.) On October 14, 2021, the instant lawsuit was filed. (Compl., Dkt. No. 1.)

In April 2024, UMS filed a motion to dismiss for lack of subject matter jurisdiction, on the ground that IMM failed to allege the parties' citizenship. (*See* Dismissal Order at 1, 2, Dkt. No. 186.) The Court found that the complaint did suffer from the "technical defect of failing to clearly allege the citizenship of the parties," and dismissed the complaint with leave to amend. (Dismissal Order at 3-4.) IMM then filed the operative complaint, asserting that IMM was an Arizona citizen and UMS was a California citizen. (Am. Compl. ¶¶ 1, 2.)

On May 28, 2024, UMS filed the instant motion to dismiss. On June 11, 2024, IMM filed its opposition. (IMM Opp'n, Dkt. No. 191.) On June 18, 2024, UMS filed its reply. (UMS Reply, Dkt. No. 193.)

## II.     DISCUSSION

### A.     Motion to Strike

In its reply, UMS sought judicial notice of various documents concerning IMM's domicile and domestication. IMM then filed an objection, challenging the relevance of the documents. (Dkt. No. 195.) This led to UMS filing a motion to strike IMM's objection as an impermissible sur-reply, while attaching its own evidence. (Dkt. No. 196.) IMM filed an opposition the following day, and UMS filed a reply the same day. (Dkt. Nos. 197-98.)

The Court finds the parties' quarrels to be unhelpful and unprofessional.[2] In any case, the

---

[2] The Court previously commented on counsel's use of personal attacks on each other, observing it was "neither professional nor persuasive" and "runs afoul of the Guidelines for Professional Conduct." (8/15/23 Summ. J. Order at 6-7 n.2, Dkt. No. 154.) Despite the Court's admonition, counsel's vitriol has only escalated in their recent briefing. (*See* UMS Mot. to Dismiss at 7 (asserting that "IMM's lack of candor . . . is truly mind-boggling"), 18 (describing IMM as "chasing UMS for the past seven years in baseless and meritless litigation finally metastasizing into this third action, solely designed to put UMS out of business"); IMM Opp'n at 2 (describing UMS's motion as "quite literally the definition of lying in wait, and UMS goes far beyond the parameters of a well-taken motion").) The Court seriously considered requiring the parties to resubmit all briefing with such language removed. Instead, the Court again refers counsel to the

Court did not find it necessary to consider the documents at issue. Accordingly, the Court OVERRULES IMM's objections and TERMINATES the motion to strike.

### B.   IMM Citizenship

Per 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Here, the primary issue is whether IMM is incorporated in California, such that it is a citizen of California.

The parties do not dispute that IMM domesticated in Arizona in 2014 but do disagree on the legal effect of domestication. UMS contends that domestication is insufficient to make IMM an Arizona citizen, citing treatises and case law that found a state's requirement that a corporation obtain a license or be denominated a domestic corporation in order to do business does not create citizenship. (UMS Mot. to Dismiss at 10-11.) Here, however, IMM did not merely obtain a business license, nor was it being required to domesticate to do business in Arizona. Rather, IMM made the voluntary decision to file articles of incorporation. Notably, at the time of IMM's domestication, Arizona Revised Statute § 10-220 stated: "Any foreign corporation may become a corporation <u>incorporated under and subject to the provisions of the laws of this state</u> by filing articles of domestication[.]" (Emphasis added.) While A.R.S. § 10-220 was subsequently repealed, it was in operation when IMM domesticated, such that IMM became incorporated in Arizona. Likewise, A.R.S. § 29-2506 states that a domesticated entity is considered to be organized under the governing statute of the domesticated entity, and that it is the same entity as the domesticating entity. As applied, Arizona law recognizes IMM as being incorporated in Arizona, and that it is the same entity, without interruption, as what was previously incorporated in California. This is confirmed by IMM's Certificate of Good Standing, which states that IMM "was incorporated under the laws of the State of Arizona on 12/22/1989." (*See* Attachment A.[3])

---

Guidelines for Professional Conduct and strongly recommends that both counsels review the Guidelines in full.

[3] The Court takes judicial notice of the Certificate of Good Standing, issued by Arizona's Office of the Corporation Commission on November 3, 2022.

UMS does not substantively address the Arizona statutes. Rather, UMS argues that because the parties agreed to apply California law in the Settlement Agreement, Arizona law is simply inapplicable. (UMS Reply at 6, 7.) The Settlement Agreement's choice of law provision, however, applies to the contractual rights and duties owed under the Settlement Agreement; it does not change the law by which IMM is formed as a business entity. UMS does not cite -- and the Court is unaware of -- any legal authority which would allow a settlement agreement's choice of law provision to affect which state's laws apply in determining a company's state of incorporation. This is particularly the case where IMM had *already* domesticated in Arizona *before* the Settlement Agreement was signed.

In the alternative, UMS argues that regardless of domestication, IMM is still incorporated in California. (UMS Reply at 7-10.) UMS relies on California Corporations Code § 2010, which provides that a corporation that has dissolved "nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof." (UMS Mot. to Dismiss at 15; UMS Reply at 9.) "California Corporations Code § 2010 provides that a corporation which is dissolved continues to exist for purposes of defending actions against it for injuries arising out of its predissolution activities." *N. Am. Asbestos Corp. v. Superior Court*, 180 Cal. App. 3d 902, 905 (1986), *disapproved on other grounds by Greb v. Diamond Int'l Corp.*, 56 Cal. 4th 243, 272 (2013); *see also Penasquitos, Inc. v. Superior Court*, 53 Cal. 3d 1180, 1193-94 (1991) (explaining that "an injured party whose claim arises after dissolution is generally precluded from pursuing a dissolved corporation's assets [unless the] injury or damage . . . is caused by the corporation's predissolution activities but occurs or is discovered after the dissolution"). As IMM points out, this case does not involve the winding up of its business or any predissolution activities. Rather, through this lawsuit, IMM seeks to enforce a settlement agreement it entered into *after* it dissolved, challenging actions that occurred thereafter. Thus, California's dissolution statute does not make IMM a California citizen for purposes of the instant lawsuit.

4

1    Finally, UMS argues that IMM is a California citizen by virtue of having *previously* been
2    incorporated there, pointing to § 1332(c)(1)'s statement that a corporation is "a citizen of every
3    State . . . by which it has been incorporated." (UMS Reply at 7-8.)  "Because the drafters of [] this
4    section used the present perfect tense when explaining that a corporation is deemed to be a citizen
5    of any state in which it 'has been' incorporated, it is possible to read the statute to treat a
6    corporation as a citizen of any state in which it has ever been incorporated." *In re SAU #59*, Case
7    No. 09-cv-168-PB, 2009 U.S. Dist. LEXIS 98456, at *4 (D.N.H. Oct. 13, 2009).  Courts, however,
8    have explained that such an interpretation is "inconsistent with the overarching purpose that the
9    diversity statute was intended to serve" because "the Constitution's diversity clause and its
10   statutory counterpart were intended to make the federal forum available to litigants who have
11   reason to fear that they will be treated unfairly in state court because of their status as out-of-
12   staters." *Id.*  Deeming a corporation to be a citizen of a state in which it was previously
13   incorporated "would make corporations citizens of states with which they have no substantial
14   connection when the lawsuit in question is commenced.  Such corporations clearly have the same
15   reason to fear discrimination in state court as any other foreign corporation." *Id.* at *5.  Thus,
16   UMS's "proposed interpretation tends to undermine rather than further the diversity statute's
17   manifest purpose." *Id.*; *see also Nieves v. Travelers Cas. Ins. Co. of Am.*, No. 2:14-cv-05536-
18   CAS(VBKx), 2014 U.S. Dist. LEXIS 174941, at *13 (C.D. Cal. Sep. 29, 2014) (same).

19   UMS contends that *In re SAU #59* is inapplicable here because it concerns insurance
20   departments and state insurance laws concerning the transfer of domicile.  (UMS Reply at 11.)
21   While true, the reasoning of *In re SAU #59* is sound.  Under UMS's interpretation, a corporation
22   that incorporates in State A will forever be a citizen of State A, even if it has moved all its
23   operations to State B, is considered to be incorporated in State B, and has dissolved itself in State
24   A.  This will be the case even if decades have passed, during which the corporation has no
25   connection whatsoever to State A.  Yet UMS would argue that such a corporation would still be a
26   citizen of State A and could be required to litigate in the state courts there, subject to the potential
27   discrimination any other foreign corporation would otherwise be able to avoid.  Such a reading is
28   inconsistent with the purpose of § 1332(c)(1).

5

Accordingly, the Court concludes that IMM is an Arizona citizen and not a California citizen. Thus, diversity jurisdiction exists.

### III. CONCLUSION

For the reasons stated above, the Court DENIES UMS's motion to dismiss.

The Court converts the August 27, 2024 case management conference to a trial setting hearing. The parties are directed to jointly submit proposed dates for the pretrial conference and trial. The Court will be holding trials in even months in 2025, and its first availability will be February 18, 2025.

IT IS SO ORDERED.

Dated: August 16, 2024

_____
KANDIS A. WESTMORE
United States Magistrate Judge